ANDREW G. NELSON, Inc., a Corporation, Plaintiff,

v.

Frank JESSUP, as Superintendent of State Police of the State of Indiana,

John Webster, as a Sergeant of the State Police of the State of Indiana and as Chief Enforcement Officer of the Inspection and Enforcement Department for the enforcement of the Motor Vehicle Act of the State of Indiana,

The Public Service Commission of Indiana and Warren Buchanan, Wendell Tennis and M. Elliott Belshaw, as members of the Public Service Commission of Indiana, Defendants.

No. IP–55–C–26.

United States District Court
S. D. Indiana, Indianapolis Division.

June 22, 1955.

222

Gilliom & Gilliom, by Elbert R. Gilliom, Indianapolis, Ind., for plaintiff.

Edward K. Steers, Atty. Gen. of Ind., for defendant.

STECKLER, Chief Judge.

Pursuant. to the three-judge Memorandum Entry heretofore made in this cause 134 F.Supp. 218, this matter came on for adjudication by the District Judge to whom the case was originally assigned, and the Court having considered the evidence together with the briefs and oral arguments of counsel for the parties, now finds the facts specifically to be as follows:

1. The plaintiff is a corporation which was organized in 1951, and exists, under the laws of the State of Illinois, and has and maintains its principal office in the City of Chicago of said state. The defendants are citizens of the State of Indiana, residing officially in Marion County, Indiana. Defendant Frank Jessup is the duly appointed and acting superintendent of the State Police of Indiana. Defendant John Webster is a member of said State Police, with the rank of sergeant, and is also the duly appointed and acting chief enforcement officer of the inspection and enforcement department of the Public Service Commission of Indiana, which department is charged by law with the duty and responsibility of enforcing compliance with the provisions of the Motor Vehicle Act of Indiana, Burns' Ann.St. § 47–1211 et seq. The defendant Public Service Commission of Indiana is the administrative body empowered to administer said Act. The defendants Warren Buchanan, Wendell Tennis, and M. Elliott Belshaw are the duly appointed and acting members of said Public Service Commission of Indiana.

2. The value of the matter in controversy is more than three thousand dollars ($3,000.00), exclusive of interest and costs.

3. The plaintiff is the owner and holder of a federal motor contract carrier permit numbered MC 1194, which was issued to it by the Interstate Commerce Commission on June 18, 1951, under the provisions of Part II of the Interstate Commerce Act of the United States, 49 U.S.C.A. § 301 et seq. The following is a true and complete copy of said permit:

"Permit        P–30.1
"No. MC 1194 *

"Andrew G. Nelson, Inc.,
Chicago, Illinois.

"At a Session of the Interstate Commerce Commission, Division 5, held at its office in Washington, D. C., on the 18th day of June, A.D., 1951

"After Due Investigation, It appearing that the above-named carrier has complied with all applicable provisions of the Interstate Commerce Act, and the requirements, rules, and regulations prescribed thereunder, and, therefore, is entitled to receive authority from this Commission to engage in transportation in Interstate or foreign commerce as a motor carrier; and the Commission so finding;

"It Is Ordered, That the said carrier be, and it is hereby, granted this Permit as evidence of the authority of the holder to engage in transportation in interstate or foreign commerce as a contract carrier by motor vehicle; subject, however, to such terms, conditions, and limitations as are now, or may hereafter be, attached to the exercise of the privileges herein granted to the said carrier.

"It Is Further Ordered, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

"New and used store fixtures, new and used household goods, and stock in trade of drug stores, over irregular routes,

"Between points in Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin.

"And It Is Further Ordered, That this permit shall be effective from the date hereof and shall remain in effect until suspended, changed, or revoked as provided in said Act.

"By the Commission, division 5.

"W. P. Bartel,
(Seal)                    Secretary.

\* "This permit embraces the operating rights in Permit No. MC 1194, issued March 13, 1942, acquired by carrier herein pursuant to MC–FC 53070."

4. Said permit has never been in any manner changed, suspended, or revoked by the Interstate Commerce Commission, and the plaintiff is operating thereunder in the ten states therein specified.

5. The legend in said permit reading "This permit embraces the operating rights in Permit No. MC 1194, issued March 13, 1942, acquired by carrier pursuant to MC–FC 53070" refers to a permit issued by the Interstate Commerce Commission on March 13, 1942, to plaintiff's predecessor in interest, Andrew G. Nelson, doing business under the name and style of "Nelson Warehouse & Express Co." Said earlier permit was issued pursuant to an order therefor of Februray 14, 1938, by the Interstate Commerce Commission under the provisions of Part II of the Interstate Commerce Act known as the "Grandfather" provision. Said order and said earlier permit contained the same description of the classes of property to be transported as is contained in plaintiff's permit as set out in paragraph 3 of these findings.

6. When the plaintiff received its said federal permit of June 18, 1951, it filed a copy thereof with the Public Service Commission of Indiana and received from said state Commission a permit, dated August 16, 1951, and titled "Contract Carrier Permit." Said state permit by its terms authorizes the operation by plaintiff "of motor vehicles as a contract carrier of property Interstate" as authorized in an attached copy of an order of said state Commission of July 19, 1951. In said order it was ordered that a per-

mit be issued to the plaintiff herein "to operate motor vehicles as a contract carrier of property, interstate, as follows, to-wit:

"New and used store fixtures, new and used household goods, and stock in trade of drug stores, over irregular routes,

"From and to all points and places in the State of Indiana using all Federal, State and County Highways."

Said state permit has never been changed, suspended, or revoked by the Public Service Commission of Indiana.

7. On and before July 1, 1935, also when said order of February 14, 1938, was issued by the Interstate Commerce Commission, plaintiff's said predecessor in interest was engaged in the interstate transportation by motor vehicle as a contract carrier of property of all classes which are described in said order and in said federal permits. He did on said dates and before the Federal Motor Carrier Act of 1935 was enacted transport shipments of numerous commodities of the kinds handled or used by drug stores as stock in trade, not only when the same were destined to or for drug stores, but also when such shipments were destined to or for others than drug store operators. He continued to do so as such individual contract carrier after he received said federal permit of March 13, 1942, up until the time when the plaintiff corporation acquired his said federal permit and his transportation business. During said long period of time plaintiff's said predecessor in interest built up, as a substantial part of the whole transportation business which the plaintiff corporation acquired from him, a valuable business in transporting shipments of commodities of said class to or for others than drug stores to the point where he was receiving a gross revenue of more than $100,000 a year therefrom at the time when the plaintiff corporation succeeded him.

8. Upon acquiring said transportation business and said federal permit in 1951, the plaintiff corporation continued

and increased said phase of said transportation business. Plaintiff now derives annually more than $400,000 of operating revenue from said phase of its transportation business. On the average work day the plaintiff transports not less than twenty (20) pay loads of property over Indiana highways in interstate commerce from which it receives operating revenues of not less than $100 per load. Plaintiff's annual operating revenue from such interstate transportation over Indiana highways with said questioned phase of its transportation business is approximately $300,000. Copies of all contracts which plaintiff has had, or now has, with shippers are filed by it with the Interstate Commerce Commission. Shipping records and papers kept by plaintiff at its office disclose the items shipped and the consignors and the consignees. Inspectors for the Interstate Commerce Commission have since plaintiff acquired said business in 1951 periodically inspected plaintiff's contracts, records, papers and business. The plaintiff has at all times kept on file with the Interstate Commerce Commission schedules of rates providing rates for all commodities which it transports.

9. On January 21, 1954, Division 5 of the Interstate Commerce Commission on its own motion instituted a proceeding before it, with this plaintiff as the respondent therein, to determine whether the description of "stock in trade of drug stores" contained in plaintiff's said federal permit authorized the plaintiff to transport shipments of commodities of that class to or for others than drug stores. Said proceeding is entitled "MC–C–1610, Andrew G. Nelson, Inc.—Investigation of operation." The Bureau of Inquiry and Compliance of the Interstate Commerce Commission appeared in said proceeding at a hearing conducted by a hearing examiner of the Commission. Said hearing examiner filed a report and recommended order with the Commission in September, 1954, wherein he adopted an interpretation of said permit as contended for by said Bureau to the effect that commodities of the class of "stock in trade of drug stores" may be transported under said permit only when destined to drug stores or for eventual use of drug stores. At said hearing the plaintiff contended for the interpretation which it always gave said permit in practice to the effect that said permit authorizes the transportation of commodities of the kinds handled or used by drug stores irrespective of whether the shipments were destined to or for drug stores or to or for others. In his report to the Commission the examiner stated the respective contentions of said Bureau and of this plaintiff and the "sole issue" as follows, to-wit:

"Although some of the commodities transported by respondent might be questioned as to whether they constitute part of the stock in trade of a drug store, the bureau does not raise such question. Instead, it contends that the authority to transport 'stock in trade of drug stores' permits only the transportation of commodities which at the time are part of the stock in trade of a drug store, or are intended for eventual use as the stock in trade of a drug store. Thus, the bureau's ultimate contention is that the respondent's permit restricts transportation to authorized commodities moving to or from a drug store, or to or from a warehouse or other repository when such commodities are ear-marked for eventual use as the stock in trade of a drug store.

"The respondent contends that the description 'stock in trade of drug stores' permits transportation from and to any consignor and consignee, provided of course that the commodities transported are the same as those sold in drug stores. It is asserted by respondent that the permit does not include any language restricting the transportation to a particular or specified class of consignees.

"The sole issue herein is thus explicit and requires a determination of the extent of the authority grant-

ed by the commodity description 'stock in trade of drug stores'."

10. The plaintiff filed exceptions to said report and recommended order of said hearing examiner. On March 17, 1955, Division 5 of the Interstate Commerce Commission overruled said exceptions and approved the examiner's said report and recommended order. The plaintiff intends to pursue all remedies available to it before the Interstate Commerce Commission, and if necessary, on judicial review by the courts, in order to have its said federal permit finally and authoritatively interpreted in accordance with its said contention, and the plaintiff has employed counsel in the District of Columbia for that purpose and has instructed him to pursue all remedies available to plaintiff for that purpose.

11. Neither the Interstate Commerce Commission, nor anyone acting for it, has taken any steps of any kind to stop or prevent plaintiff during the pendency of said proceeding from continuing to transport to or for others than drug stores shipments of commodities of the class of stock in trade of drug stores.

12. Since the institution of said proceeding before the Interstate Commerce Commission, arrests are made, and threatened to be made, in Indiana by members of the state police of the State of Indiana of plaintiff's drivers while they are in charge of interstate trucks operated by plaintiff bearing interstate shipments of commodities on the charge of operating without proper authority from the Public Service Commission of Indiana. Some of said arrests are made on said charge when it appears to such arresting officers from their examination of manifests or waybills on trucks operated by plaintiff that the plaintiff does not have authority from the Public Service Commission of Indiana to transport interstate over Indiana highways the commodity or commodities being hauled on such trucks to the consignees or from the consignors shown by such manifests and waybills. Some of said arrests by said officers are made on said charge in cases of interstate shipments of a commodity or commodities transported by plaintiff which in the opinion of the arresting officer are not included in any class of property that is described in the hereinbefore-mentioned state permit of August 16, 1951, which was issued to plaintiff by the Public Service Commission of Indiana. The members of the state police making such arrests are assigned by the defendant superintendent of the state police department to the inspection and enforcement department of the defendant Public Service Commission pursuant to the provisions of amended section 5 of the Motor Vehicle Act of the State of Indiana, 47–1215 Burns, 1953 Supp., which section provides that such assigned police shall serve under the "supervision and control" of the superintendent of state police and "in cooperation with the commission." Said assigned state police when making such arrests act more immediately under and pursuant to direction from the defendant chief enforcement officer of the defendant commission's inspection and enforcement department, and he intends to continue to direct said assigned state police to enforce said Motor Vehicle Act of the State of Indiana in said same manner and to make arrests on said charge whenever any shipments are transported in interstate commerce by plaintiff on Indiana highways which in their opinion are not within the authority of plaintiff's said permit from the Public Service Commission of Indiana.

13. For the period that will intervene to the time of a final determination of the issue presented in said proceeding now pending before the Interstate Commerce Commission, said threatened arrests would, if not enjoined by the Court, cause the plaintiff to suffer irreparable harm and damage to its said interstate transportation business and otherwise in a substantial sum which is in excess of the hereinbefore mentioned sum of three thousand dollars ($3,000.00).

14. In event the full Interstate Commerce Commission approves the said report and recommended order as made by the hearing examiner and approved by

Division 5 of the Commission and such determination is affirmed by the courts upon judicial review, the plaintiff will, as testified by its president, voluntarily cease and desist from transporting to or for others than drug stores any shipments of commodities of the class of property described in its permit as "stock in trade of drug stores." In the meantime the plaintiff is without any adequate remedy to protect its said established interstate transportation business against said arrests except by injunction.

15. The plaintiff is during the pendency of said proceeding before the Interstate Commerce Commission continuing to conduct its said questioned interstate transportation business, and is so doing under belief on its part that its said federal permit should in the said proceeding be interpreted as authorizing the same. The Interstate Commerce Commission, with knowledge that plaintiff is continuing to conduct said questioned transportation business during the pendency of said proceeding has not taken any steps to stop or to prevent plaintiff from so doing during the pendency of said proceeding. The plaintiff has not yet exhausted the remedies afforded it in the Interstate Commerce Act of the United States for rehearings in said pending proceeding and for a final determination by the full Interstate Commerce Commission. The plaintiff has the right in the premises to pursue its remedies in said pending proceeding without meanwhile having its said established interstate transportation business interfered with and disrupted on Indiana highways by said threatened arrests by said state police, and is entitled to have its said right and its said established business protected during the pendency of said proceeding by an injunction enjoining said arrests during said interim.

### Memorandum of The Court's Conclusions of Law

The question presented by this proceeding upon plaintiff's amended complaint and petition for a permanent injunction is whether the defendants may validly cause the arrests of drivers of an interstate carrier on a charge of operating without authority from the Public Service Commission of Indiana. It is concluded that they may not. The complexity of the problem is best evidenced by the history of the case prior to the filing of the complaint in this Court.

The plaintiff is the holder of a federal motor contract carrier permit issued on June 18, 1951 by the Interstate Commerce Commission under the provisions of Part II of the Interstate Commerce Act. Plaintiff's predecessor in interest, Andrew G. Nelson, doing business as Nelson Warehouse & Express Co., was granted permits on February 14, 1938 and March 13, 1942, under the "grandfather" clause. Plaintiff's 1951 permit and that of his predecessor authorized the transportation of "new and used store fixtures, new and used household goods, and stock in trade of drug stores, over irregular routes" in ten midwestern states. On August 16, 1951, plaintiff received from the Public Service Commission of Indiana a permit which described plaintiff's authority in the identical language of its federal permit.

On January 21, 1954 the Interstate Commerce Commission, Division 5, ordered an investigation of plaintiff's operations to determine whether plaintiff was engaged in the transportation of commodities outside the scope of its authority in violation of § 209(a) of the Interstate Commerce Act, 49 U.S.C.A. § 309 (a). Hearings were held by Examiner William J. Sweeney in Chicago, Illinois in May, 1954. Despite plaintiff's contention that its permit covered the transportation of commodities of the kinds handled or used by drug stores irrespective of whether the shipments were destined to or from drug stores or to or from others, the examiner found plaintiff to have exceeded its authority and recommended that plaintiff be ordered to cease and desist from further illegal operations. The plaintiff, following the prescribed procedures, filed exceptions to the report of the hearing officer, but on March 17, 1955, four days before this

matter was heard by this Court, Division 5 of the Interstate Commerce Commission overruled plaintiff's exceptions and approved the examiner's report. Plaintiff's president, Harold Nelson, testified on hearing that the plaintiff intended to pursue all administrative and judicial remedies available to it under the Interstate Commerce Act.

During the years 1954 and 1955, members of the State Police of Indiana have arrested drivers of trucks operated by plaintiff in interstate commerce upon the charge of operating without proper authority from the Public Service Commission of Indiana, when it appeared to the arresting officer from an examination of the manifest or waybill that plaintiff did not have authority from the Indiana Commission to transport commodities to the consignees or from the consignors shown by the manifests and waybills. There would seem to be parallel action on the part of the hearing examiner and the state police, but there is no evidence that the defendants had knowledge of the Interstate Commerce Commission proceedings. At the time this matter came on for hearing, March 21, 1955, neither plaintiff's federal nor Indiana permit had been changed, suspended or revoked by the respective commissions.

▮ The plaintiff's permit granted by the Public Service Commission of Indiana with respect to the commodities which plaintiff has been authorized to transport is a duplication of the permit granted by the Interstate Commerce Commission. Consequently, an interpretation of the Indiana permit is a simultaneous equation of its federal permit. And since plaintiff is solely an interstate carrier, any construction placed on the state permit directly affects plaintiff's rights under its federal permit and the Interstate Commerce Act. The vice as the Court sees it is highlighted by the testimony of Virgil Perrotti, an officer of the Indiana State Police called by the defendants. In response to a question concerning the arrests of one Rushus Williams, a driver of plaintiff, on November 9, 1954, Officer Perrotti stated: "Yes, I stopped this truck for a routine inspection concerning P.S.C.I. regulations. * * * And he had bills—bill showed that he had carried 912 cases of canned goods from Armour and Company, Chicago, to Armour and Company, Toledo * * *. And I checked a copy of his operating authority, P.S.C.I. operating authority, and that indicated that he was authorized to carry new and used furnishings, I believe, and 'stock in trade of drug stores', and in *my opinion* canned goods was not a 'stock in trade of drug stores', and I made an arrest for operating without P.S.C.I. authority." (Emphasis added.)

▮ The interpretation of a federal permit by state officers is contrary to the principle that "(t)he precise delineation of an enterprise which seeks the protection of the 'grandfather' clause has been reserved for the Commission." Noble v. United States, 1942, 319 U.S. 88, 93, 63 S.Ct. 950, 952, 87 L.Ed. 1277. Circuit Judge Sanborn in Dart Transit Co. v. Interstate Commerce Commission, D.C. 1953, 110 F.Supp. 876, 880 stated: "It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful." Also see, Pomprowitz v. United States, D.C.1954, 119 F.Supp. 824. It seems reasonably deducible from this proposition that if the courts, in the exercise of judicial restraint, refuse to project themselves into the area granted exclusively to the Interstate Commerce Commission, except where the order is clearly wrong or arbitrary; United Truck Lines v. Interstate Commerce Commission, 9 Cir., 189 F.2d 816, then certainly the construction of an interstate carrier's permit by state officials is untenable.

While the interpretation placed upon plaintiff's permit by the state officers may ultimately be borne out, nevertheless, "Congress in the Motor Carrier Act

adopted a comprehensive plan for regulating the carriage of goods by motor truck in interstate commerce. The federal plan of control was so all-embracing that former power of states over interstate motor carriers was greatly reduced. No power at all was left in states to determine what carriers could or could not operate in interstate commerce." Castle v. Hayes Freight Lines, 1954, 348 U.S. 61, 75 S.Ct. 191, 192. The comprehensive plan of which Mr. Justice Black spoke in the Castle case is evidenced by the intricate provisions of § 17 of the Act, 49 U.S.C.A. § 17, which defines the right of a party to a public hearing, rehearing and reargument of decisions, and stay of decisions. In addition, paragraph nine of § 17 authorizes an aggrieved party, upon the exhaustion of his administrative remedies, to apply to the appropriate United States Court for judicial review of the Commission's order. The procedure for review is provided for in 28 U.S.C. § 2321 et seq. Other enforcement provisions of the Act are contained in § 222, 49 U.S.C.A. § 322, wherein the Commission is authorized to apply to the district courts to enforce its orders. This section also provides for criminal prosecution. Section 212, 49 U.S.C.A. § 312 empowers the Commission to revoke or suspend permits for wilful failure to comply with its orders.

■■ Thus, it becomes quite obvious that to allow state officers to interpret federal permits would deny the aggrieved party extensive rights granted under the Federal Act. As indicated by the Supreme Court in the Castle case, if a state has a grievance against an interstate carrier its remedy lies under § 204(c) of the Act, 49 U.S.C.A. § 304(c), which provides for the filing of complaints " * * * to the Commission by any person, State board, organization or body politic *. * *." And for the investigation and disposition of such complaints. Although the defendants were acting under authority from the State of Indiana, their action cannot be sustained when weighed against the announced purpose of Congress " * *. * of developing, coordinating and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal System, and of national defense." 54 Stat. 899, 49 U.S.C.A., note preceding Section 301.

■ There is no need for the Court to deal with the question of the constitutionality of Section 47–1221, Burns Ind. Stats.Ann., particularly in view of the provisions of Section 47–1235, Burns Ind. Stats.Ann. With respect to interstate commerce, the latter section provides: "The provisions of this act (§§ 47–1211— 47–1250) shall apply alike to persons engaged in the transportation of persons or property over the highways of the state of Indiana whether such transportation be interstate or intrastate, except in so far as this act may contravene the Constitution or the laws of the United States. (Acts 1935, ch. 287, § 25, p. 1412.)" The Court merely holds that Section 47– 1221, supra, is inapplicable to the plaintiff to the extent that it would authorize the actions complained of.

■ While the plaintiff, upon hearing, failed to establish that it has sustained extensive damages notwithstanding the number of arrests of its drivers, yet the threat of irreparable injury is implicit in the defendants' joint answer wherein it is averred that defendants intend to cause further arrests of plaintiff's drivers in this situation. The testimony offered by the defendants further emphasizes this threat. Nor does plaintiff have an adequate remedy at law. Dohrn Transfer Co. v. Hoegh, D.C.1953, 116 F.Supp. 177. Consequently an injunction will lie.

Counsel for plaintiff are directed to submit an appropriate injunctive order in conformity with this memorandum.