In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00203-CV

_____

JERMAINE THOMAS, Appellant

V.

IRON HORSE TERMINALS, L.L.C., Appellees

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-208891

MEMORANDUM OPINION

Appellant Jermaine Thomas ("Thomas") appeals from an order granting a motion for summary judgment in favor of Iron Horse Terminals, L.L.C. ("IHT"). Thomas contends that the trial court erred in granting the motion for summary judgment because IHT is a common carrier under the Federal Employers' Liability Act ("FELA"), and that Thomas's election of workers' compensation benefits does not bar his FELA claim. For the reasons discussed below, we affirm the trial court's judgment.

## Background

On October 20, 2020, Thomas, while working as a train conductor, was injured while in the course and scope of his employment with IHT. Thomas and two coworkers, an engineer and a switchman/brakeman, were preparing to move rail cars to an adjacent track, when Thomas was injured when rail cars collided on the track. As a result of the collision, Thomas was knocked back and landed on the rail tracks as the rail car moved towards him. The rail cars rolled over Thomas causing a broken pelvis, lower spine fractures, fractured ribs, and abrasions.

One year later, Thomas sued his employer, IHT. In his petition, Thomas sought all rights and remedies under FELA for his injuries. Thomas alleged that FELA applied because IHT engaged in interstate commerce.

IHT generally denied the allegations in Thomas's original petition and specifically denied that FELA applied because, at the time of his injury, IHT was not a common carrier operating a railroad engaged in interstate commerce and not governed under the provisions of FELA. IHT stated that Thomas was barred from seeking remedies under FELA because his exclusive remedy was workers' compensation for his work-related injury. *See* Tex. Lab. Code Ann. § 408.001 ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage [] against an employer [] for the death or work-related injury sustained by the employee.").

2

In October 2022, IHT filed its Motion for Summary Judgment. In the Motion, IHT argued that it is a subscriber to Texas Workers' Compensation benefits and that Thomas was notified of IHT's subscription when hired. IHT argued that his injury is covered under its workers' compensation insurance policy which, is Thomas's only remedy.

IHT further argued that even if Thomas is not estopped from recovering under FELA, Thomas's FELA claim would fail because IHT is not a common carrier under the statute. IHT argued that it was a drop off and pick up facility and that its contracts with Burlington Northern Santa Fe and Union Pacific Railway Company (collectively referred to as "railway companies") allowed the railway companies to drop and pick up on designated tracks. IHT contracted with ExxonMobil for storage and shipping services, and ExxonMobil would also deliver railcars to IHT. IHT employees would sort, switch, and store railcars for both ExxonMobil and railway companies, but IHT employees never transported railcars beyond the boundaries of the IHT facility. IHT argued that it has never held itself out to the public as a common carrier, did not have published rates, and did not serve as a link between railway companies.

IHT attached as exhibits to the Motion for Summary Judgment: Plaintiff's Original Petition, Texas Mutual Workers' Compensation Insurance Policy in effect at the time of Thomas's injury, IHT Workers' Compensation Notice, and an

3

Affidavit of Cody Birdwell dated September 10, 2022. In Birdwell's affidavit, he stated that he was the General Manager for IHT, and that in October 2020, IHT offered rail car storage and switching services at its Beaumont facility. Birdwell further stated that railway companies used IHT storage tracks as railcar drop off and pickup, and once delivered, IHT employees would sort, switch, and store the rail cars within the IHT facility. He explained that IHT employees did not move rail cars beyond the IHT facility, nor did IHT link two common carriers or contract with any railroad to perform that railroad's common carrier functions. IHT contracted with the railway companies separately for drop off and pick up at designated IHT tracks, and with ExxonMobil for railcar storage and switching services. Birdwell further stated that it did not hold itself out as a common carrier; at the time of the accident, IHT did not transport persons or property beyond the IHT facility; and IHT did not have published rates for the public at large to contract under.

Thomas responded to IHT's Motion for Summary Judgment and argued that IHT has continuously acted as a common carrier and is subject to liability under FELA. According to Thomas, IHT maintained more than thirty-five miles of railroad tracks inside their facility that were connected to interstate main lines. These tracks allowed railway companies to have ingress and egress capabilities to IHT. Thomas stated that IHT acts as a middleman between the railway companies and ExxonMobil, the ultimate destination of the railcars, despite railway companies

4

having the ability to take their railcars directly into the ExxonMobil facility. Thomas argued that IHT provided services including material handling, modular construction rail logistics support, pipeline construction materials by rail, laydown, dry bulk, transload, and liquid transload. Railway companies would bring materials to IHT that would be taken to other locations. Thomas argued that IHT had contracts directly with railway companies that are both considered to be common carriers. Thomas further argued that IHT provides through a third party, maintenance services and inspections for Federal Railroad Administration ("FRA") compliance, and that through the FRA, IHT is designated as a railroad. Finally, although the railway companies did not pay IHT for their services in 2020, IHT later contracted with the railway companies for renumeration.

Thomas argued that IHT is a common carrier under FELA when considering the *Lone Star* factors. *See Lone Star Steel Co. v. McGee*, 380 F.2d 640, 647 (5th Cir. 1967). Thomas argued that IHT performed rail services through the services they provided including storage and switching services, operating a three-man crew, and providing railcar maintenance and inspections. Thomas argued that IHT performed rail services as part of the total rail service contracted for by a member of the public. According to Thomas, the services that IHT contracted to provide with the railway companies, are services that another railroad obligated itself to perform. Thomas argued that IHT is the link between the railway companies and ExxonMobil, and

5

that IHT's contract with ExxonMobil to provide rail services is the performance of rail service that is "part of the total rail service contracted for by a member of the public[]" considered in *Lone Star. Id.* Thomas argued that it is a material issue of fact if IHT's performance is part of the total rail service contracted for by a member of the public.

Thomas further argued although IHT confirmed that the railway companies did not pay for IHT's services in 2020, the railway companies do contract with IHT for renumeration today. According to Thomas, a material issue of fact existed regarding renumeration between IHT and the railway companies. Thomas stated that IHT's operations are more extensive than those of an in-plant facility, and more appropriately should be considered a linking carrier or mixed-function carrier. IHT should be considered a linking carrier since it has a contractual relationship with the linking entity and the common carrier, and as a rail entity linking two or more common carriers. Thomas argued that IHT could also be considered a mixed-function carrier because IHT was part of the common carrier system of the railway companies by providing rail service to the public and acting as an intermediary.

Thomas attached as exhibits a portion of the deposition transcript of Willie Harris, a portion of the deposition transcript of Cody Birdwell, a portion of the deposition transcript of Plaintiff Jermaine Thomas, Plaintiff's Original Petition, photos from IHT's website dated January 18, 2023, photos from IHT's website dated

6

September 8, 2022, and photos from a search on the Federal Railroad Administration's website regarding IHT.

IHT replied to Thomas's opposition to its motion for summary judgment and argued IHT was still entitled to summary judgment because Thomas failed to address IHT's argument that Thomas's election of workers' compensation benefits bars his FELA claim regardless of IHT's classification, and that Thomas failed to meet his burden of demonstrating that IHT was a common carrier as of the date of his injury. IHT attached as exhibits an affidavit by Cody Birdwell dated September 10, 2022, and the complete deposition transcript of Cody Birdwell.

A hearing on IHT's Motion for Summary Judgment was held on March 2, 2023. At the hearing, IHT argued that IHT is not a common carrier and subject to FELA because IHT does not hold itself out to the public as a railroad that engages in interstate commerce, the railway companies do not have an ownership interest in IHT, IHT did not receive any money from the railway companies for the services at the IHT facility, IHT is not an intermediary connecting two rail carriers, and IHT did not engage in interstate commerce. IHT then provided the trial court with examples of situations similar to those in this case, where the trial court held that the entity was not a railroad and not a FELA employer.

In response, Thomas argued that IHT is a common carrier because courts have held that terminal facilities were an integral part of the railroad line, and its services

7

were public in nature. According to Thomas, IHT did not only perform switching services, but also received and rearranged the railcars at the facility. Thomas argued that IHT is a linking entity, and a business used to facilitate rail services of its customers.

That same day, the trial court signed an order granting IHT's Motion for Summary Judgment and dismissing Thomas's claims and causes of action against IHT. This appeal followed challenging the trial court's order.

## Standard of Review

We review a summary judgment de novo. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). If the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment on any meritorious theory advanced by the movant in the motion for summary judgment. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

## Analysis

The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to

judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439-40 (Tex. 2020); Tex. R. Civ. P. 166a(c). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the non-movant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). Consequently, the non-movant must expressly present in writing any reasons the non-movant contends avoids the movant's entitlement to summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 677-78.

In his first issue, Thomas argues that IHT is a common carrier under FELA. Thomas argues that IHT is performing a part of the total rail service contracted for by a member of the public. According to Thomas, IHT contracted with the two railway companies, who are both considered to be common carriers in the industry and IHT serves as a linking carrier between the railway companies and ExxonMobil. Thomas argues that IHT's contract with ExxonMobil to provide rail service creates a material issue of fact regarding if the total rail service contracted for was by a member of the public. Thomas further argues that IHT's contract with the railway companies, which are common carriers, and that this offer of service to common carriers can be deemed to be IHT holding itself out to the public. Although at the

9

time of the incident, IHT stated that the railway companies did not pay IHT for its services, the current contracts between the companies are for renumeration, and this supports a material issue of fact.

FELA applies to common carriers by railroad who are engaging in interstate commerce. 45 U.S.C.A. §§ 51, 57; *see also Edwards v. Pac. Fruit Express Co.*, 390 U.S. 538, 539-540 (1968). A common carrier for purposes of FELA liability has been described as

> one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Kieronski v. Wyandotte Terminal R.R. Co.*, 806 F.2d 107, 108 (6th Cir. 1986) (quoting *Kelly v. Gen. Elec. Co.*, 110 F.Supp. 4, 6 (E.D. Pa.), *aff'd*, 204 F.2d 692 (3d Cir.), *cert. denied*, 346 U.S. 886 (1953)). The plaintiff bears the burden of proving that the defendant is a common carrier, and the plaintiff "therefore must present affirmative evidence indicating such." *Mickler v. Nimishillen and Tuscarawas Ry. Co.*, 13 F.3d 184, 189 n.3 (6th Cir.), *cert. denied,* 511 U.S. 1084 (1994).

In *Lone Star Steel Company*, 380 F.2d 640, *cert. denied*, 389 U.S. 977 (1967), the Fifth Circuit Court of Appeals identified the relevant factors in determining whether a railroad is a common carrier. *Id.* at 647. The factors considered are whether: (1) the entity is actually performing rail service; (2) the service being

performed is part of the total rail service contracted for by a member of the public; (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public; and (4) remuneration for the services performed is received in some manner, such as a fixed charge or by a percentage of the profits, from a railroad. *Id.*

IHT acknowledges that it performs rail service. *See Nichols v. Pabtex, Inc.*, 151 F.Supp.2d 772, 778 (E.D. Tex. 2001) ("[activities of the defendant] included 'switching cars'…, a practice that even [the defendant] admitted would constitute rail service[]"); *see also Iverson v. S. Minn. Beet Sugar Coop.*, 62 F.3d 259, 262-63 (8th Cir. 1995) (holding that switching cars and putting them into position for unloading at various loading docks is rail service and meets the first *Lone Star* factor). Even so, application of each of the remaining three *Lone Star* factors indicates IHT is not a common carrier for FELA purposes.

At his deposition, IHT President, Cody Birdwell, testified that the property and rail on-site is owned by IHT only. Neither ExxonMobil nor the railway companies have an ownership interest in IHT. IHT served as warehouse for ExxonMobil, and ExxonMobil's payment for storage is IHT's main source of revenue. IHT only had Industry Track Agreements with the railway companies to use the certain specified railway tracks available to them, and the operations and

maintenance of the tracks. IHT did not receive any revenue from the railway companies, nor did it contract to move railcars in interstate commerce or outside the IHT facility. IHT maintained its tracks used by the railway companies up to the IHT property line, and the railway companies maintained the tracks outside of the IHT property. Birdwell testified that IHT is not an intermediary between the railway companies and ExxonMobil because the companies have separate railway connections to and from ExxonMobil. He explained that IHT served as a warehouse to store railcars for ExxonMobil temporarily. At the time of the incident, IHT did not move railcars outside the IHT facility, did not perform transloading activities, and did not perform any railcar repairs or maintenance.

Additionally, in his affidavit, Birdwell stated that IHT provided switching and storage services for the railway companies and ExxonMobil when railcars were dropped off. IHT did not contract with any railway company to perform common carrier functions, and did not link two common carriers together. IHT contracted with the railway companies separately to allow them to drop and pickup on designated tracks. IHT contracted with ExxonMobil for railcar storage and switching services. IHT does not hold itself out as a common carrier, and at the time of the incident, IHT did not transport persons or property beyond the IHT facility. IHT does not have published rates that the public at large can contract under.

Birdwell's deposition testimony and affidavit confirm that IHT was the sole owner of the rails on its property, that IHT provided storage and switching services to the railway companies and ExxonMobil, and that IHT did not contract with the railway companies to provide common carrier functions. At the time of the incident, IHT did not collect payment from any common carrier railroad, only ExxonMobil.

In sum, application of the *Lone Star* considerations demonstrates as a matter of law that IHT was not "one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally." *Lone Star Steel Co.*, 380 F.2d at 643 (quoting *Kelly.*, 110 F.Supp. at 6). IHT did not provide rail services that a common carrier was otherwise obligated to perform; did not share ownership in a common carrier; did not contract with a common carrier to provide rail services; did not link common carriers together; and did not receive renumeration from a common carrier. Accordingly, IHT was not a "common carrier by railroad" under FELA, and the district court properly granted summary judgment in IHT's favor.

We overrule Thomas's first issue.

Next, Thomas argues that his election of workers' compensation benefits does not bar a claim for benefits under FELA. Having determined that IHT is not a common carrier under FELA, a claim for benefits under FELA is not applicable. *See* 45 U.S.C.A. §§ 51, 57; *see also Edwards*, 390 U.S. at 540 (explaining that FELA

13

applies to common carriers by railroad who are engaging in interstate commerce). Therefore, we need not address Thomas's second issue. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down an opinion as brief as practicable addressing all issues necessary to the appeal's resolution).

## Conclusion

Having considered and overruled Thomas's arguments, we affirm the trial court's order granting summary judgment in favor of IHT.

AFFIRMED.


W. SCOTT GOLEMON
Chief Justice

Submitted on May 6, 2024
Opinion Delivered June 19, 2025

Before Golemon, C.J., Wright and Chambers, JJ.