## KELLY v. GENERAL ELECTRIC CO.
### Civ. No. 11545.

United States District Court,
E. D. Pennsylvania.
Feb. 24, 1953.

ment on the ground that the complaint fails to set forth a cause of action under the Federal Employers' Liability Act in that the defendant is not a common carrier by railroad engaged in commerce between the states. The facts have been presented by affidavits in support of and in opposition to the motion, depositions, and answers to interrogatories. The only question before me at this time is whether General Electric Company, plaintiff's employer, is a common carrier by railroad engaged in commerce between the states. If it is not, the defendant is entitled to judgment on the ground that the complaint fails to set forth a cause of action under the aforesaid statute. I conclude that the defendant General Electric Company is not a common carrier by railroad and accordingly is entitled to judgment in its favor.

The controversy is as to the proper legal conclusion to be drawn from the following undisputed factual situation. General Electric Company at its aforesaid plant is engaged in the business of manufacturing, rebuilding and repairing electrical equipment and other products. As part of its plant equipment it has a system of internal trackage some 2.17 miles in length, 2 switching engines used in moving cars within the confines of the plant, 9 specially constructed cars which it rents to rail carriers for the transportation of defendant's products, and 10 other cars used for the housing and exhibition of defendant's products. Defendant's internal tracks are connected with a siding of the Pennsylvania Railroad, also located within the confines of defendant's plant. Cars are delivered by the Pennsylvania Railroad to the said siding and thereafter removed and distributed throughout the plant by the switching engines of the defendant. Occasionally cars containing less than carload shipments are delivered to the siding. The cars are then removed by the defendant to its buildings, its portion of the freight removed, and the cars returned to the siding for delivery by the Pennsylvania Railroad to other consignees. It appears further that most of the products shipped by the defendant are shipped F.O.B. plant.

Richter, Lord & Farage, Philadelphia, Pa., for plaintiff.

Charles J. Biddle and Francis Hopkinson, Philadelphia, Pa., for defendant.

CLARY, District Judge.

This is an action instituted by plaintiff, an employee of General Electric Company, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for injuries sustained when he was run down by a switching engine, owned and operated by the defendant, on its tracks within the confines of its plant at 69th Street and Elmwood Avenue, Philadelphia, Pennsylvania. The matter is presently before me on defendant's motion for judg-

Under the terms of a "siding agreement" dated May 14, 1925, the Pennsylvania Railroad undertook to furnish service to the General Electric Company plant. This agreement, among other things, provided that the construction, maintenance and operation of General Electric Company's tracks should conform to the rules and regulations of the Interstate Commerce Commission and the appropriate State Commission. The agreement also provided that the Company would construct and maintain certain tracks in the bed of 68th Street (a public highway in the City of Philadelphia, not legally open) and would reimburse the railroad for the cost of a bridge over the 68th Street tracks, should that portion of the street be later opened by the City of Philadelphia to public use.

Plaintiff contends that the above related facts establish General Electric Company as a common carrier by railroad within the purview of the Federal Employers' Liability Act.

██ A common carrier has been defined generally as one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant. The dominant and controlling factor in determining the status of one as a common carrier is his public profession as to the service offered or performed. 9 American Jurisprudence, 430, 431, and cases there cited.

The defendant has by affidavit in support of its motion for judgment stated that it is in the business of the manufacture and sale of electrical equipment, that it owns a few pieces of rolling stock which it rents to rail common carriers, that it pays to rail common carriers the same tariffs for transportation of its goods in its own cars as it does for transportation of its goods in cars not owned by it, that it moves cars within its plant solely for the purpose of loading and unloading goods shipped by, to, or for the use of the defendant, that it does not transport the goods of others for hire, that it maintains no facilities for so transporting goods of others, that it does not hold itself out to the public as a common carrier, that it issues no bills-of-lading, that it makes no charges for and receives no compensation from any source for use of its tracks or other facilities, that it holds no franchise, license, or permit from the United States or any of its agencies or of any State as a common carrier by railroad, that it maintains a system of trackage on its own property for its own convenience and necessity in the conduct of its business of manufacturing, rebuilding and repairing electrical equipment and other products.

There has been no showing by the plaintiff that the defendant General Electric Company comes within the terms of the general definitions of a common carrier above set forth. There is no showing that General Electric Company holds itself out generally to the public as offering services of transportation for hire, nor is there a showing that defendant engages in "carrying for hire the goods of those who see fit to employ them," U. S. v. Louisiana & P. R. Co., 234 U.S. 1, 34 S.Ct. 741, 742, 58 L.Ed. 1185. The plaintiff attempts rather to spell out the status of a common carrier by railroad on the part of the defendant from the following course of conduct: that the defendant owns and operates 2 switching engines and several pieces of rolling stock, that in effecting movement of cars to and from the Pennsylvania Railroad Company sidings the defendant's engines go upon said sidetrack of the Pennsylvania Railroad Company, that in moving cars containing less than carload shipments, General Electric Company moves property of other consignees within those cars, that General Electric Company moves the property of others when it moves the shipments of its products from the loading platforms to the Pennsylvania Railroad siding, since those goods are shipped F.O.B. plant and title to the goods passes as soon as placed on the cars.

All these factors were considered in an application by General Electric Company to

the I.C.C. to obtain a rate allowance from a rail common carrier for performing at General Electric Company's Schenectady plant the same type services here performed. General Electric Company v. New York Central & Hudson River Railroad, 14 I.C.C. 237. The Commission there held the defendant's operation to be merely that of a plant facility and not that of a common carrier, and that the General Electric Company was not entitled to a rate allowance for the use of said facilities. That decision was cited with approval by the Supreme Court of the United States in U. S. v. Louisiana & P. R. Co., supra, in pointing out the distinction between plant facilities and spur lines of a common carrier.

Plaintiff has advanced two additional arguments in support of its contention that General Electric Company is a common carrier by railroad. First, he contends that under Pennsylvania law all private sidetracks connected with tracks of a common carrier are impressed with a public use, citing Lehigh Navigation Coal Co. v. Public Utility Commission, 133 Pa.Super. 67, 1 A.2d 540. General Electric Company's internal tracks are connected by a switch with the Pennsylvania Railroad tracks or siding. Therefore, argues plaintiff, the entire internal trackage system of General Electric Company is impressed with a public use and it follows, continues plaintiff, that General Electric Company is a common carrier under the test set forth in U. S. v. Louisiana & P. R. Co., supra, 234 U.S. at page 24, 34 S.Ct. at page 746:

> "It is the right of the public to use the road's facilities and to demand service of it, rather than the extent of its business, which is the real criterion determinative of its character."

From the context of the above quotation it is clear that the Supreme Court had reference to "facilities" as the word was used in Lehigh Navigation Coal Co. v. P. U. C., supra, in its all inclusive sense as meaning tracks, engines, etc. Indeed, it is this broad concept of the term "facilities" which underlies the theory of public use under Pennsylvania law, i. e., that such tracks when constructed and connected with tracks of a common carrier become a part of the "facilities" of the railroad to which connected. Whether the import of the holding of the Lehigh Navigation Coal Co. case is that all of the internal trackage system of General Electric Company is subject to public use or only that portion of the trackage which constitutes the Pennsylvania Railroad siding is not entirely clear, but the most that can be said for such a ruling is that it impresses General Electric tracks with a public use: as part of the Pennsylvania Railroad facilities, which is not the same as constituting General Electric Company a common carrier by railroad. Furthermore, plaintiff has ignored the portion of the quotation which sets forth as part of the test the right of the public to "demand service" of General Electric Company. There is nothing to indicate that the public could demand service of General Electric Company with respect to its switching engines and other facilities.

The other argument advanced is that General Electric Company constructed tracks in the bed of a public street and since only a common carrier may exercise a right of eminent domain for that purpose, citing Barker v. Hartman Steel Co., 129 Pa. 551, 18 A. 553, this Court should apply a presumption of lawfulness to the conduct and find that in so constructing the tracks, General Electric Company acted as a common carrier. In the Hartman Steel Co. case, no such presumption was applied to make valid the manufacturing company's operation of a railroad on a public highway. There, upon complaint of adjoining property owners, the operation of a railroad upon a public highway by the manufacturing company was enjoined on the ground that only a common carrier could exercise such power. Whether General Electric Company might, upon complaint of proper parties, be at some time enjoined from operating over tracks in the bed of 68th Street is not before me and has no bearing on a decision of the issue before me. Certainly, nothing in the Hartman case supports the conclusion advanced by plaintiff that any one who operates railroad tracks

over a public street must be presumed to be acting lawfully and must therefore be regarded as doing so as a common carrier.

The other cases cited by plaintiff afford him no comfort, they seem to support rather the position of the defendant and the conclusions which I have reached. For example, Crane Railroad Co. v. Central Railroad Co. of New Jersey, 248 Pa. 333, 93 A. 1076, was a case in which the Supreme Court of Pennsylvania, in arriving at the conclusion that Crane Railroad Company was a common carrier and not a plant facility, pointed out that it was chartered under the railroad laws of Pennsylvania, that it was controlled and operated by a management separate from the Crane Iron Works whose rail facilities it had taken over, that it exercised the right of eminent domain, that its tracks connected with tracks of other railroads, and in the exercise of its charter rights transported *for hire* freight *not only from the plant of Crane Iron Works but from the several other manufacturing establishments adjacent to its line*. Applying those tests defendant here cannot be regarded as a common carrier.

■ Plaintiff cites also U. S. v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, as authority that the purposes of incorporation of the owner of rail facilities are not dispositive of the issue whether or not it is a common carrier. With that general principle I agree, but under the facts of that case it was clear that the State of California was operating as a common carrier. The State Belt Railroad, owned by the State, was a terminal facility servicing 175 industries and 45 piers and it served as a link in the through transportation of interstate shipments to and from points in San Francisco over connecting carriers. Its service was of a public character and for hire. It was pointed out in that case that all the essential elements of interstate rail transportation were present in the service rendered by the State Belt Railroad, i. e., the receipt and transportation for the public for hire of cars moving in interstate commerce.

With regard to plaintiff's contention that the defendant carries goods of others in that it ships its products F. O. B. plant, little need be said. I assume that the same situation obtains in the case of every plant facility. It is clear that General Electric Company moves only its own products and whether or not title has passed when General Electric moves those products over its own tracks to Pennsylvania Railroad's siding that service is rendered solely for the convenience of the defendant and no separate charge is made therefor. With respect to the movement of the goods of other consignees of less than carload shipments in cars containing partial shipments to or from General Electric Company, the only movements that are made by the defendant are those for its own convenience and benefit. They add nothing to the service rendered by the common carrier to the other consignees and no charge is made for those movements by General Electric Company. Certainly it could not be contended that the other consignees of less than carload shipments have a right to demand that General Electric Company perform those services. It would appear beyond question that the defendant could refuse to move such cars and could unload its consignments of freight from the Pennsylvania Railroad's siding without moving the cars containing less than carload shipments.

■ For the reasons set forth above, the conclusion is inescapable that the defendant General Electric Company is not a common carrier by railroad engaged in commerce between the states, that plaintiff has no right of action against it under the Federal Employers' Liability Act and, therefore, defendant is entitled to judgment in its favor. An order will be entered accordingly.