LOVELESS, Appellant,

v.

RAILWAY SWITCHING SERVICES, INC., Appellee.

[Cite as *Loveless v. Ry. Switching Serv., Inc.* (1995), 106 Ohio App.3d 46.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940319.

Decided Aug. 23, 1995.

48

*Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, P.C.,* and *Eric D. Jackstadt; Trainor & Darpel & Associates* and *Bob Trainor,* for appellant.

*Lindhorst & Dreidame* and *James L. O'Connell;* and *Dow T. Huskey,* for appellee.

PAINTER, Judge.

Plaintiff-appellant Darrell Loveless appeals a summary judgment entered against him in an action filed in the court of common pleas, in which Loveless was seeking compensation under the Federal Employers Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code, for injuries he sustained while employed by the defendant-appellee, Railway Switching Services, Inc. ("RSS"). The only issue on appeal is whether the trial court properly held that RSS is not a "common carrier" for purposes of FELA claims by injured employees.

FELA provides a compensation scheme for employees injured in the course of their employment by a common carrier when the injury is caused by the negligence of the employer. Section 51 et seq., Title 45, U.S.Code. If the employer is not a common carrier within the meaning of the statute, compensation under FELA is not available to the employee, who must instead pursue state workers' compensation remedies for injuries sustained in the course of employment.

The facts, at least insofar as they relate to whether RSS is a common carrier, are not in dispute. At the time of his injury, Loveless was employed by RSS in its operation at the Procter and Gamble Ivorydale plant in Cincinnati, Ohio. RSS is a Florida corporation with no parent or subsidiaries. RSS engages in the business of performing in-plant rail switching services for company-clients at the facilities of those clients. These services consist primarily of moving cars between "holding yards" [1] and various points within a client's facilities for loading. After a client loads goods onto cars, RSS assembles "cuts" [2] of outbound cars in the holding yards. Additionally, RSS performs limited maintenance on locomotives leased by RSS or its clients and on track within the clients' facilities. RSS engages in these activities pursuant to contracts individually negotiated with thirteen clients at seventeen locations in ten states. RSS owns no track, locomotives, or cars and earns ninety-eight percent of its revenue from the services described above. RSS advertises its services in order to secure more clients that require only in-plant rail switching services and do not require that RSS use track owned by full-service common carrier railroads. The services RSS performed at the Ivorydale plant were identical to those set out above.

In the context of these facts, RSS either is or is not a common carrier. At first look, by applying logic and common sense, it would seem to be clear that RSS is *not* a common carrier, but is instead engaged in a private undertaking for hire. Of course, we must examine the statutes and cases to determine whether the law comports with common sense in this instance.

In support of his argument that RSS is a common carrier pursuant to the provisions of FELA, Loveless cites *Lone Star Steel Co. v. McGee* (C.A.5, 1967), 380 F.2d 640. *Lone Star* enumerates four criteria for determining whether a rail service is a common carrier. Loveless paraphrases these criteria, and in doing so, omits significant and determinative portions of the third and fourth criteria.

Loveless correctly states in the first two criteria that (1) the entity in question must actually perform rail service, and (2) the service must be a part of the total rail service for which a member of the public contracts. Loveless states that under the third criterion an entity must hold "itself out as part of a system of interstate rail transportation * * *." However, the *Lone Star* court's definition of the third criterion is that "the entity is performing as part of a system of interstate rail transportation *by virtue of a common ownership between itself and a railroad or by a contractual relationship with a railroad,* and hence such

---

1. Full-service railroads deliver rail cars destined for RSS clients and take cars for shipments of goods from the holding yards.

2. A "cut" is a set of cars already prepared and connected to allow a full-service railroad to enter the client's holding yard and quickly remove the correct cars for transit.

entity is deemed to be holding itself out to the public." (Emphasis added.) *Id.* at 647.

Loveless also omits a significant portion of the fourth criterion, which he states as receiving remuneration for the services performed. In the fourth criterion, the *Lone Star* court held that "remuneration for the services performed is received in some manner, such as a fixed charge *from a railroad* or by a percent of the profits *from a railroad.*" (Emphasis added.) *Id.*

The omitted passages clearly contemplate an affiliation between an in-plant operation and a full-service, common carrier railroad in order to confer the status of common carrier upon what would otherwise be an in-plant operation, which is outside the scope of FELA.

In *Lone Star*, the defendant produced steel and steel products and operated an in-plant rail system at its plant. Other industries also had operations on the plant grounds. A main line of the Texas & Northern Railway Company ("T & N"), a full-service common carrier railroad, extended the length of Lone Star's facility in conjunction with the in-plant system. Lone Star owned over ninety percent of the stock of T & N and received dividends on the profits. Lone Star also owned and operated locomotives at the plant for Lone Star's in-plant rail movements and for the other industries at the plant in furtherance of T & N's operations with those businesses. Because of these close connections between Lone Star and T & N, the court held that Lone Star's rail activities exceeded the scope of the typical in-plant operation and met the four criteria to be classified as a common carrier.

Next, Loveless asserts that *Assn. of P & C Dock Longshoremen v. Pittsburgh & Conneaut Dock Co.* (1992), 8 I.C.C.2d 280, demonstrates that RSS is a common carrier under FELA. However, Loveless again paraphrases the commission's holding in a manner that omits crucial language. The commission quoted the four criteria of *Lone Star* and reduced the inquiry to a two-prong analysis. The first prong in the commission's analysis is whether an entity performs a rail operation. RSS concedes that it does. The second prong in the analysis is whether the entity "holds the service out to the public." After a close reading of the commission's opinion, we believe that "holding out to the public" means that the holding out is to the public at large.

In *P & C Dock*, the Bessemer & Lake Erie Railroad ("B & LE"), a full-service common carrier, held out the switching, loading and unloading services of the Pittsburgh and Conneaut Dock Company ("P & C Dock") as part of B & LE's total package of rail service, charging its customers for the services provided by P & C Dock pursuant to a contract between the two companies. As in the third criterion in *Lone Star*, the commission pointed to the existence of either a contractual relationship or a relationship by common ownership between a full-

service common carrier and a switching-service provider as critical to determining whether the switching-service provider held itself out to the public. As in *Lone Star*, the commission held that P & C Dock was a common carrier because its contractual relationship with B & LE demonstrated a close affiliation.

After considering *Lone Star*, the United States Sixth Circuit Court of Appeals distinguished common carriers from other types of rail operations by delineating various categories of rail operations. *Kieronski v. Wyandotte Terminal RR. Co.* (C.A.6, 1986), 806 F.2d 107. According to the Sixth Circuit, one category of rail operation that does not qualify as a common carrier is an "in-plant system."

■ In-plant system operations consist primarily of moving cars between holding yards and various points within a client's facilities for incoming and outgoing cars. Common carriers deliver and take cars from the holding yards. The mere fact that an in-plant system is connected to tracks owned or operated by a common carrier is not enough to bring the in-plant system within the scope of the FELA provisions, because virtually all in-plant operations share this characteristic. See *Kieronski, supra*, 806 F.2d at 109.

The services provided by RSS mirror those of an in-plant system, except that RSS performs on a contract basis for individual plants, but not with any affiliation to full-service common carrier railroads.

■■ Another type of rail service that does not fall within the scope of FELA is a private carrier. Private carriers haul goods for clients "pursuant to individual contracts, entered into separately with each customer." *Id.*

By contrast, a common carrier offers its transportation services to the public at large. "The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently and hence is regarded in some respects as a public servant." *Kieronski, supra*, 806 F.2d at 108, citing *Kelly v. Gen. Elec. Co.* (E.D.Pa.1953), 110 F.Supp. 4, 6, affirmed (C.A.3, 1953), 204 F.2d 692, certiorari denied (1953), 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390.

Here, RSS operates as a private carrier, because it performs its services on individual contracts entered into separately with each customer, rather than for the public at large. The "public servant" ingredient is totally lacking. Thus, RSS is best characterized as a private carrier operating an in-plant operation for the Ivorydale plant.

Quite clearly, RSS is not a common carrier. RSS manages in-plant rail operations for its clients, operating solely on the property of individual clients pursuant to separately negotiated contracts. RSS is not in any way affiliated with a full-service common carrier either contractually or by virtue of common ownership. Furthermore, RSS does not appear to transport people or property

"from place to place" as required by FELA. Even Loveless concedes that RSS contracts exclusively for in-plant operations at its clients' facilities, and then only on the condition that the use of common-carrier tracks will not be necessary.

Though Loveless makes much of RSS's advertising its services in trade publications, this is not a holding out as contemplated by *Lone Star, P & C Dock, Kieronski* or FELA. Service providers do not change status to common carriers based on advertisements unless they undertake to carry for all people indifferently. RSS did not. See, also, *Home Ins. Co. v. Riddell* (C.A.5, 1958), 252 F.2d 1.

Based on the foregoing analysis, no genuine controversy exists regarding the status of RSS. At most RSS is a private carrier, but could be more accurately described as an independent contractor performing in-plant rail operations for specific company-clients. We cannot hold that RSS is a common carrier under any interpretation of the undisputed facts herein. FELA does not apply to RSS. Therefore, summary judgment was properly entered in the court below and is hereby affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.